UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FIBERCO, INC.,  §<br>§<br>*Plaintiff,*  §<br>§<br>v.  §<br>§<br>ACADIA INSURANCE COMPANY  §<br>and UNION STANDARD LLOYDS  §<br>d/b/a UNION STANDARD  §<br>INSURANCE GROUP,  §<br>§<br>*Defendants.*  § | Civil Action No. 3:22-CV-0525-X |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Acadia Insurance Company and Union Standard Lloyds's[1] motion to strike the expert testimony of David Day. (Doc. 53). After careful consideration, and as discussed below, the Court **DENIES** the motion. The Court **ORDERS** Plaintiff FiberCo, Inc., at its own cost, to afford Acadia the opportunity to redepose David Day, if Acadia chooses to do so.

### I. Background

This is an insurance coverage dispute. FiberCo's building was insured under a policy issued by Acadia effective from April 10, 2020 to April 10, 2021 (the "Policy").[2] In April 2020, the building suffered damage from a hailstorm while the Policy was

---

[1] The Court's Order on the parties' motions for summary judgment concludes that FiberCo did not establish that it had contractual standing to sue Union Standard in this matter. Therefore, the Court dismisses Union Standard as a party to this action.

[2] Doc. 40-1 at 70.

1

in effect.[3]  FiberCo filed a claim with Acadia for the hail damage to the building.[4] Acadia's engineer found at least seven places on the roof of the building with openings at seams of overlapping metal panels, reducing the water shedding capability of the roof in those areas, and additional hail dents.[5]  Acadia denied FiberCo's claim and explained that although the seven open seams were a covered loss, the dents to the roof were excluded by the Policy's cosmetic damage exclusion, and therefore the amount of the covered loss fell below the Policy's deductible amount.[6]  FiberCo filed suit.[7]

During discovery, FiberCo's expert, David Day, provided an expert report, concluding, in relevant part, that all of the building's metal roofing needed to be replaced due to the functional damage caused by hail and the wetted insulation needed to be replaced.[8]  Day also explained that the hail dents which have not opened seams will cause accelerated corrosion and reduce the useful life of the roof by 25%.[9] FiberCo provided initial expert designations and first amended designations to Acadia and Union, which listed Day as a retained expert.[10]  Acadia and Union then deposed Day and found that Day's assistant, not Day, had conducted the investigation

---

[3] Doc. 40-1 at 3–4.

[4] Doc. 58-3.

[5] Doc. 58-18.

[6] Doc. 58-16.

[7] Doc. 1-3.

[8] Doc. 55-2 at 5.

[9] Doc. 61-1 at 313–319, 326, 350–353, 402–404 & 440–441.

[10] Docs. 30, 33.

of FiberCo's building.[11]  Subsequently, Day personally inspected FiberCo's building for the first time.[12]  FiberCo then filed its Second Amended Expert Designations, after the deadline and without the Court's leave,[13] which did not include a supplemental report or declaration from Day at that time.[14]  The second designations explain that Day's testimony will rely on his previous deposition and his later inspection of the property.[15]

Acadia and Union Standard filed a motion to strike the expert testimony of David Day because they object to Day's characterization of the dents as "functional" and to the scope and reasonableness of necessary repairs to FiberCo's building.[16] They contend that Day's opinions are not based on reliable facts or data, are not the product of reliable scientific principles and methods, have not applied any reliable principles and methods to the facts of the case, and do not assist the trier of fact.[17] They also contend that Day's second expert designation is untimely and prejudicial.[18]

## II. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony as evidence.  Rule 702 permits opinion testimony from a witness "qualified as an expert

---

[11] Doc. 55-1 at 5–6.

[12] Doc. 38 at 3.

[13] *Id.*

[14] FiberCo's response to the motion to strike includes a declaration from Day, which Acadia and Union contend is in effect a new expert report.  Docs. 61-1 at 313, 65 at 5.

[15] Doc. 38 at 3.

[16] Doc. 53.

[17] Doc. 54 at 2.

[18] Doc. 65 at 3–7.

3

by knowledge, skill, experience, training, or education" if the expert's knowledge will assist the trier of fact, and (1) "the testimony is based on sufficient facts or data;" (2) "the testimony is the product of reliable principles and methods;" and (3) "the expert has reliably applied the principles and methods to the facts of the case."[19]  As a gatekeeper, this Court must permit only reliable and relevant testimony from qualified witnesses to be admitted as expert testimony.[20]  The party offering the expert testimony has the burden of proof, by a preponderance of evidence, to show that the testimony is reliable and relevant.[21]

Expert testimony is relevant if it assists the trier of fact in understanding the evidence or determining a fact in issue.[22]  Federal Rule of Evidence 401 further clarifies that relevant evidence is evidence that has "any tendency to make a fact more or less probable than it would be without evidence" and "is of consequence in determining the action."[23]

Expert testimony is reliable if "the reasoning or methodology underlying the testimony is scientifically valid."[24]  Such testimony must be "more than subjective belief or unsupported speculation."[25]  In other words, this Court need not admit

---

[19] FED. R. EVID. 702.

[20] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

[21] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

[22] *Daubert*, 509 U.S. at 591.

[23] *See Mathis*, 302 F.3d at 460 (applying Rule 401 to expert testimony).

[24] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (citing *Daubert*, 509 U.S. at 592–93).

[25] *Daubert*, 509 U.S. at 590.

testimony "that is connected to existing data only by the *ipse dixit* of the expert."[26] The Court also does not need to admit testimony based on indisputably wrong facts.[27] In conducting its analysis, the Court focuses on the reasonableness of the expert's approach regarding the matter to which his testimony is relevant and not on the conclusions generated by the expert's methodology.[28] The Court normally analyzes questions of reliability using the five nonexclusive factors known as the *Daubert* factors.[29]

### III. Analysis

The crux of the dispute here concerns the reliability of Day's testimony and the timeliness of the second amended expert designations. As an initial matter, however, Day is clearly qualified, and his reports are relevant to the action. Day has a Bachelor of Science in Construction and is a registered professional engineer and an expert in foundation and structural defects in residential and commercial construction.[30] He has been a structural forensic engineer since 1998 and has performed over 1,000 structural forensic inspections, and at least half are wind/hail assessment inspections. Day is the President and Chief Engineer for CASA Engineering, L.L.C., and has been designated a Diplomate in Forensic Engineering Board by the National

---

[26] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

[27] *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996).

[28] *Daubert*, 509 U.S. at 595; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153–54 (1999).

[29] The five nonexclusive *Daubert* factors are: (1) whether the expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 593–94.

[30] Doc. 61-1 at 313–14.

Academy of Forensic Engineers.[31] He is therefore qualified, and Acadia and Union do not raise any issues concerning Day's qualifications.[32] His reports are also relevant to the issues in this case, in fact, they are highly relevant. Day's report provides information concerning whether the building suffered hail damage and the extent of the damage—both issues are the heart of this dispute. Thus, Day's testimony is relevant because it will assist the trier of fact in determining facts in issue.[33]

Testimony is reliable when "the reasoning or methodology underlying the testimony is scientifically valid."[34] Acadia and Union urge the Court to strike Day's expert testimony because his opinions that accelerated corrosion and microfractures are not supported by a reliable source or data and are contrary to the publications Day relies upon.[35] FiberCo responds that these opinions are based on Day's personal observations and experience, which renders the defendants' arguments appropriate for cross-examination but is not a reason to strike Day's testimony.[36] The Court agrees with FiberCo. Courts are to approach these disputes with deference to the

---

[31] *Id.* at 320–22.

[32] *See* Docs. 54, 65.

[33] Acadia and Union's only argument concerning the relevancy of Day's testimony is that Day did not consider the cosmetic damage exclusion in the Policy while rendering his opinions. *See* Doc. 54 at 8. But the scope of the Policy is not what Day's opinion is relevant for. Instead, his testimony aids the factfinder in determining whether the building suffered hail damage and the extent of the damage—not interpreting the Policy's text.

[34] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (citing *Daubert*, 509 U.S. at 592–93).

[35] Doc. 54 at 9–13.

[36] Doc. 60 at 22–23.

jury's role as the arbiter of conflicting opinions.[37]  Generally, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[38]

At bottom, the defendants seek to strike Day because they disagree with his application of the scientific methodology to the facts of this case.  Essentially, they contend that Day misinterprets the publications he relies upon.[39]  "[T]he traditional and appropriate means of attacking shaky but admissible evidence" are "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof[.]"[40]  The Court therefore **DENIES** Acadia and Union's motion to strike Day.

The Court, however, does take issue with the untimeliness of FiberCo's second amended expert designations, failure to ask this Court for leave, and misrepresenting that Day had examined and inspected the property when he had not personally done so.  Acadia would be unfairly prejudiced without the opportunity to depose Day after he has inspected the property.  This is especially true considering FiberCo led Acadia to believe Day had inspected the property prior to Day's deposition.  Therefore, the Court **ORDERS** that Acadia be afforded the opportunity to redepose Day, if it chooses to, at FiberCo's expense.

---

[37] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

[38] *Id.*

[39] *See* Doc. 54 at 9–13.

[40] *Daubert*, 509 U.S. at 596.

## IV. Conclusion

The Court **DENIES** the motion to strike expert David Day. (Doc. 53). The Court **ORDERS** Plaintiff FiberCo, Inc., at its own cost, to afford Acadia the opportunity to redepose David Day, if Acadia chooses to do so.

**IT IS SO ORDERED** this 15th day of November, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE