UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FIBERCO, INC., § <br> § <br> *Plaintiff,* § <br> § <br> v. § <br> § <br> ACADIA INSURANCE COMPANY § <br> and UNION STANDARD LLOYDS § <br> d/b/a UNION STANDARD § <br> INSURANCE GROUP, § <br> § <br> *Defendants.* § | Civil Action No. 3:22-CV-0525-X |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff FiberCo, Inc.'s partial motion for summary judgment, (Doc. 39), and Defendants Acadia Insurance Company and Union Standard Lloyds's motion for summary judgment, (Doc. 56). Having reviewed the motions, the applicable caselaw, and the underlying facts, the Court concludes that there are genuine disputes of material fact related to the breach of contract claim and the statutory claims. Therefore, the Court **DENIES** FiberCo's partial motion for summary judgment. (Doc. 39). The Court also **DENIES IN PART** Acadia and Union Standard's motion for summary judgment as to all of FiberCo's claims against Acadia. (Doc. 56). However, the Court concludes that FiberCo has failed to prove that it has contractual standing to sue Union Standard in this matter, and therefore, the Court **GRANTS IN PART** the motion for summary judgment as to all claims brought against Union Standard. (Doc. 56). And the Court **DISMISSES** Union Standard as a party to this action.

1

## I. Background

This is an insurance coverage dispute. FiberCo's building was insured under a policy issued by Acadia effective from April 10, 2020 to April 10, 2021 (the "Policy").[1] The Policy is subject to an endorsement for limitations on roof surfacing which contains the following cosmetic damage exclusion (the "Cosmetic Damage Exclusion"):

> We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.[2]

In April 2020, the building suffered damage from a hailstorm while the Policy was in effect.[3] FiberCo filed a claim with Acadia for the hail damage.[4] Acadia hired an engineer to assess the damage.[5] He found at least seven places on the roof of the building with openings at seams of overlapping metal panels, reducing the water shedding capability of the roof in those areas, and additional hail dents that did not yet cause open seams.[6] FiberCo's public adjuster sent Acadia a $406,678.05 estimate for the cost to replace the hail damage to the building and a sworn proof of loss.[7]

---

[1] Doc. 40-1 at 70.

[2] *Id.* at 153.

[3] *Id.* at 3–4.

[4] Doc. 58-3.

[5] Docs. 58-10, 58-18.

[6] Doc. 58-18.

[7] Docs. 58-3, 58-13.

Acadia denied FiberCo's claim and explained that although the seven open seams were a covered loss, the dents to the roof were excluded by the Policy's Cosmetic Damage Exclusion, and therefore the amount of the covered loss fell below the Policy's deductible amount.[8] In contrast, however, FiberCo's expert concluded that the hail dents which have not opened seams will cause accelerated corrosion and reduce the useful life of the roof.[9] FiberCo therefore disputes Acadia's conclusion that the hail dents are only cosmetic.[10]

FiberCo filed suit in state court alleging claims for breach of contract and violations of the Texas Insurance Code against Acadia and Union Standard because FiberCo alleged that Union Standard underwrote the Policy.[11] Acadia and Union Standard removed the action to this Court.[12] FiberCo filed a motion for partial summary judgment,[13] and Acadia and Union Standard filed a motion for summary judgment.[14]

## II. Legal Standard

Courts may grant summary judgment if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[8] Doc. 58-16.

[9] Doc. 61-1 at 313–319, 326, 350–353, 402–404 & 440–441.

[10] Doc. 63 at 26–27.

[11] Doc. 1-3.

[12] Doc. 1.

[13] Doc. 39.

[14] Doc. 56.

matter of law."[15]  A material fact is one "that might affect the outcome of the suit under the governing law."[16]  And "[a] dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[17]  The party moving for summary judgment bears the initial burden of identifying the evidence "which it believes demonstrate[s] the absence of a genuine [dispute] of material fact."[18]

### III. Analysis

Because there are a genuine disputes of material fact regarding whether the hail dents which have not opened seams will still affect the roof's ability to act as a barrier to entrance of the elements and the proper assessment of damages, summary judgment is improper for the breach of contract claim.  Likewise, there are multiple disputes of material fact underlying the Texas Insurance Code claims, thereby precluding summary judgment as to those claims as well.

### A. Breach of Contract

Both sides moved for summary judgment on the breach of contract claim.[19]  To prove a breach of contract claim, the plaintiff must show: (1) existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages.[20]  Because insurance policies are

---

[15] FED. R. CIV. P. 56(a).

[16] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[17] *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (cleaned up).

[18] *Celotex Corp. v. Catrett*, 477 U.S. 318, 323 (1986); *see also* FED. R. CIV. P. 56(c)(1).

[19] Docs. 39, 56.

[20] *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

contracts, an insurer may be liable for breach of contract if it fails to provide coverage based on an inapplicable exclusion. In an insurance coverage dispute, Texas law places the initial burden on the insured to show that there is coverage under the applicable policy.[21] The burden then shifts to the insurer to prove that the alleged damage falls into an exclusion under the policy.[22] If the insurer does prove the applicability of an exclusion, the burden shifts back to the insured to show that an exception to the exclusion applies.[23]

Here, the parties agree that the Policy was in effect at the time of the hailstorm and could provide coverage absent an exclusion.[24] The parties disagree on the applicability of the Cosmetic Damage Exclusion to the Policy.[25] FiberCo argues that summary judgment is improper here because even the damage that Acadia considers "cosmetic" damage is covered by the Policy because it will still affect the roof's ability to act as a barrier to entrance of the elements.[26] Acadia contends that the hail dents involved here are cosmetic, not functional, and that cosmetic damage is excluded under the Policy.[27]

### 1. Cosmetic Damage Exclusion

Here, it is undisputed that there is some damage that is covered under the

---

[21] *Guaranty Nat. Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998).

[22] *Id.*

[23] *Id.*

[24] *See* Doc. 41 at 12; *see also* Doc. 57 at 8–12.

[25] *See* Doc. 41 at 15–23; *see also* Doc. 57 at 13–18.

[26] Doc. 63 at 26–27.

[27] *See* Doc. 57 at 13–18.

Policy.[28] Both parties agree the roof's damage affects its ability to keep out the elements to a lesser degree than it did prior to the hail damage because of the seven open seams.[29] But there is a fact dispute concerning whether the hail dents in the roof which have not opened seams will still effect the roof's ability to act as a barrier to entrance of the elements. The Cosmetic Damage Exclusion reads:

> We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.[30]

Acadia presents evidence that the denial of FiberCo's insurance claim was proper because the value of only the non-cosmetic damage did not exceed FiberCo's deductible.[31] FiberCo disputes this, pointing to evidence that indicates the damage that Acadia deems "cosmetic" will actually prevent the roof from acting as a barrier to entry of the elements.[32] Because there is a genuine dispute of material fact regarding the proper extent of damage covered by the Policy, the Court **DENIES** FiberCo's motion for summary judgment and **DENIES IN PART** Acadia's motion for

---

[28] Doc. 41 at 15–23; Doc. 57 at 11–12.

[29] Doc. 41 at 21; Doc. 49 at 12.

[30] Doc. 40-1 at 153.

[31] Doc. 57 at 13–18; Doc. 58-16.

[32] Doc. 63 at 26–27 (citing Doc. 61-1 at 313–319, 326, 350–353, 402–404 & 440–441). Acadia contends that this evidence, the testimony of FiberCo's expert, David Day, is improper summary judgment evidence. Acadia has a motion to strike David Day also pending before the Court. Doc. 53. For the reasons explained in its Order on the motion to strike, Day's testimony is proper summary judgment evidence and can be considered for purposes of the motions for summary judgment addressed by this Order.

6

summary judgment.

## 2. Replacement Cost Coverage

Additionally, both parties move for summary judgment on the issue of whether FiberCo is entitled to replacement cost coverage.[33] FiberCo contends that it is entitled to replacement cost coverage because it notified Acadia of its intent to replace the damaged property within the 180 days required by the Policy, and Acadia breached the Policy by improperly denying coverage based on the cosmetic damage exclusion.[34] Acadia contends that the Policy requires the insured to actually repair or replace the damaged property, which must be done as soon as reasonably possible, and FiberCo did not do so.[35] Both parties point to summary judgment evidence regarding the proper extent of damages here.[36] Thus, there is a genuine dispute of material fact on the issue of damages so the Court cannot resolve the question at summary judgment. The Court **DENIES** FiberCo's motion for summary judgment and **DENIES IN PART** Acadia's motion for summary judgment.

---

[33] Doc. 41 at 26–29; Doc. 57 at 24–25.

[34] Doc. 41 at 26–29.

[35] Doc. 57 at 24–25.

[36] *See* Doc. 41 at 26–29 (citing Doc. 40-1 at 427, 454–61, 537–38, and 544); *see also* Doc. 57 at 24–25 (citing Docs. 58-1, 58-24, 58-28, 58-29).

### 3. Union Standard

Union Standard moves for summary judgment on the breach of contract claim[37] because it is not a party to the Policy.[38] FiberCo contends otherwise, pointing to a letter from Union Standard that thanks FiberCo for selecting Union Standard as its insurance provider.[39] Whether a party has standing to pursue a claim is a question of law.[40] "Generally, a property-insurance policy is a personal contract between the insured and the insurer."[41] To establish standing to sue for a breach of contract, the plaintiff must either be in privity of contract with the defendant or be a third-party beneficiary entitled to enforce the contract."[42] "[P]rivity is a legal conclusion, not a judgmental process."[43]

Here, FiberCo's complaint alleges that Union Standard underwrote the Policy, but a sworn declaration avers that Union Standard did not issue or underwrite the Policy.[44] The declaration explains that Union Standard sometimes provides personnel to underwrite policies or adjust claims for insurance groups, like Acadia,

---

[37] Union Standard also moves for summary judgment on the Texas Insurance Code claims. Doc. 57 at 28, 30. Because FiberCo has not shown that Union Standard is its insurer, or is liable for any of the claimed conduct, the insurance code claims must also be dismissed against Union Standard.

[38] Doc. 57 at 23.

[39] Doc. 63 at 34 (citing Doc. 61-1 at 22).

[40] *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex. 1998), *cert. denied,* 526 U.S. 1144 (1999).

[41] *Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 388 (Tex. App.—Dallas 2012, no pet.).

[42] *Allan v. Nersesova*, 307 S.W.3d 564, 571 (Tex. App.—Dallas 2010, no pet.).

[43] *Benson & Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1174 (5th Cir. 1987).

[44] Doc. 58-2.

but it did not do so in this instance.[45]  Moreover, the Policy clearly lists "Acadia Insurance Company" as the insurer.[46]  FiberCo fails to adequately prove that it has a contractual relationship with Union Standard—FiberCo presents no evidence proving that the two are in contractual privity or that Union is a third-party beneficiary.  FiberCo relies upon a letter from Union Standard, but the letter alone does not establish a legal basis upon which FiberCo has standing to sue Union Standard.  Because Union Standard did not underwrite or issue the Policy, and FiberCo has not proven that it has contractual standing to sue Union Standard, the Court concludes that summary judgment is proper as to FiberCo's claims brought against Union Standard.  Therefore, the Court **GRANTS IN PART**, Union Standard's motion for summary judgment as to all the claims brought against Union Standard.

### B. Statutory Claims

Acadia moves for summary judgment on all of FiberCo's claims under the Texas Insurance Code.[47]  FiberCo moves for summary judgment on the issue of attorney's fees and interest under the Texas Insurance Code.[48]  Because there are multiple disputes of material fact, summary judgment is improper as to the Texas Insurance Code claims and is also improper on the issue of attorney's fees and interest.

---

[45] *Id.*

[46] Doc. 40-1 at 154.

[47] Doc. 57 at 25–30.

[48] Doc. 41 at 23–26.

Turning first to Acadia's motion for summary judgment, the Court concludes that there are genuine disputes of material fact that preclude summary judgment on FiberCo's Texas Insurance Code claims. FiberCo brought claims under Sections 541.060, 541.061, 542.055, 542.056, and 542.058 of the Texas Insurance Code.[49] Sections 542.055, 542.056, and 542.058 concern the insurer's proper procedure for claim-handling after receiving a claim while Sections 541.060 and 541.061 concern unfair practices in claim-handling. In short, FiberCo alleges that Acadia failed to timely and reasonably investigate its claim and engaged in unfair practices during the claim-handling process.

Acadia moves for summary judgment because FiberCo has no evidence that Acadia acted unreasonably, made misrepresentations, or failed to timely accept or reject FiberCo's claim.[50] FiberCo pointed to summary judgment evidence in support of its allegations that Acadia made misstatements and the parties dispute what the deadline was for determining whether Acadia timely resolved FiberCo's claim.[51] Both parties point to evidence that favors their interpretation of the deadline.[52] For these reasons, there are multiple disputes of material fact here: (1) whether Acadia made material misstatements of coverage in violation of Section 541.061; (2) whether Acadia timely rendered a decision or notified FiberCo of its need for additional time under Sections 542.055, 542.056, and 542.058; and (3) whether Acadia acted

---

[49] Doc. 1-3 at 10–16.

[50] Doc. 57 at 25–30.

[51] Doc. 41-1 at 1–5; Doc. 61-1.

[52] Doc. 41-1 at 1–5; Doc. 61-1; Doc. 58-3; Doc. 58-4; Doc. 58-6; Doc. 58-24; Doc. 58-27; Doc. 58-31.

reasonably in handling FiberCo's claim under Section 541.060.[53]

Because there are multiple, genuine disputes of material fact, summary judgment is improper as to FiberCo's claims under Sections 541.060, 541.061, 542.055, 542.056, and 542.058 of the Texas Insurance Code. Likewise, whether Acadia acted knowingly and intentionally is another fact dispute rendering any inquiry into the availability of punitive and treble damages improper for summary judgment.[54] Therefore, the Court **DENIES IN PART** Acadia's motion for summary judgment.

Second, FiberCo moved for summary judgment on the issue of attorney's fees and interest.[55] Because there are fact disputes surrounding the underlying claims that cannot be determined on summary judgment, it is premature to seek summary judgment on the issue of attorney's fees and interest. Therefore, the Court **DENIES** FiberCo's motion for partial summary judgment.

## IV. Conclusion

The Court **DENIES** FiberCo's partial motion for summary judgment. (Doc. 39). The Court also **DENIES IN PART** Acadia and Union Standard's motion for summary judgment as to all of FiberCo's claims against Acadia. (Doc. 56). However, the Court concludes that FiberCo has failed to prove that it has contractual standing to sue Union Standard in this matter, and therefore, the Court **GRANTS IN PART** the motion for summary judgment as to all claims brought against Union Standard.

---

[53] *See* Doc. 41 at 23–26; *see also* Doc. 57 at 25–30.

[54] Doc. 57 at 29.

[55] Doc. 41 at 23–26.

(Doc. 56).  And the Court **DISMISSES** Union Standard as a party to this action.

**IT IS SO ORDERED** this 15th day of November, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE